SQUIRE, SANDERS & DEMPSEY L.L.P.
Mark C. Goodman (State Bar No. 154692)
mgoodman@ssd.com
Evan S. Nadel (State Bar No. 213230)
enadel@ssd.com
One Maritime Plaza, Suite 300
San Francisco, CA 94111
Telephone: +1.415.954.0200
Facsimile: +1.415.393.9887

Attorneys for Defendant
WELLPET LLC as Successor-in-Interest to
OLD MOTHER HUBBARD, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JULIE M. BARNEY and CANDICE WINZEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OLD MOTHER HUBBARD, INC., a Delaware corporation; and DOE DEFENDANTS 1-10, Inclusive,<br><br>Defendants. | CASE NO. CV09-06194 VBF (FMOx)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT TERM SHEET AGREEMENT**<br><br>Judge: Hon. Valerie Baker Fairbank<br><br>Date: April 26, 2010<br>Time: 1:30 p.m. |

TO PLAINTIFFS JULIE M. BARNEY and CANDICE WINZEN AND THEIR COUNSEL OF RECORD:

  NOTICE IS HEREBY GIVEN that, on April 26, 2010, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 9 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California, Defendant WellPet LLC as Successor-in-Interest to Old Mother Hubbard, Inc. ("OMH") will and does respectfully move the Court for an order enforcing the parties' settlement term sheet entered into on or about March 3, 2010.

After weeks of discussion, the parties negotiated and executed a written term sheet that set out the agreed-to terms on which this matter could be resolved (the "Term Sheet," a copy of which is attached hereto as Exhibit A). Plaintiffs have described the Term Sheet as a "settlement agreement." (Dkt. No. 56-1 at 1.) The agreed-to terms of the Term Sheet include the scope of the settlement class, the scope of the releases, the consideration (including a donation of products and agreement to pay up to specified amounts in attorneys' fees and enhancement awards for the individual class representatives, both subject to court approval) and the promise that the parties will work to prepare a final settlement agreement that could be presented to the Court for approval. (*See* Ex. A.) The Term Sheet also makes clear that "[t]his settlement shall not be deemed an admission of liability or wrongdoing on the part of defendant . . . . Defendant denies all liability." (*Id.* at ¶6.) Finally, the Term Sheet includes a schedule for subsequent events, including presenting notice of settlement to the Court (which took place on March 4; *see* Dkt. No. 54) and filing a motion for approval of the final settlement agreement by the Court (Ex. A at ¶7).

The Term Sheet was executed by representatives of both sides on March 3. Since its execution, nothing has changed to affect the agreement. OMH has done nothing to change its terms or to suggest an intention to do anything other than fully comply with it. In fact, OMH has been working diligently on a draft final settlement agreement, as required by the Term Sheet. **Plaintiffs have not yet seen or even asked for the draft final settlement agreement.** Yet, in a filing today, plaintiffs assert that "the parties have been unable to reach agreement on material terms of the Preliminary Settlement Agreement filed with the Court on March 4, 2010" and ask the Court to withdraw the Notice of the Agreement. (Dkt. No. 58 at 2.)

Plaintiffs' repudiation of the Term Sheet and their supposed basis for doing so are, respectively, unwarranted and inaccurate. The parties reached an agreement

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California 94111

- 2 -

Notice of Motion and Motion to Enforce
Settlement Term Sheet Agreement
-- Case No. CV-09-06194 VBF (FMOx)

on many of the "material terms" of the settlement agreement and that agreement was reduced to writing. The agreement was reviewed by counsel for both sides and was executed. The Term Sheet was then filed with the Court. (*See* Dkt. No. 54.) Plaintiffs have made no effort even to discuss or negotiate the terms of a final settlement agreement, in violation of the Term Sheet. (Ex. A at 1.)

The *only* thing that has changed since the Term Sheet was executed and filed is that, on March 16, plaintiffs unexpectedly and without authorization filed a "Motion for Catalyst Attorneys' Fees," which they inaccurately described as unopposed by OMH. (Dkt. No. 56.) Because there had never been any agreement that plaintiffs could apply for fees without a final settlement agreement and because nothing in the written and executed Term Sheet authorized any request for fees prior to the execution and Court approval of the final settlement agreement, OMH immediately asked plaintiffs to withdraw their motion. Plaintiffs did withdraw the motion (Dkt. No. 58) but, at the same time, citing "differing interpretation[s] of the agreement," announced that "we do not have an agreement and your client is relieved of any obligations under the term sheet."

There is and can be no good faith interpretation of the Term Sheet that supports plaintiffs' position. OMH negotiated and executed the Term Sheet in good faith with a legitimate desire to settle the action pursuant to the terms stated therein. OMH continues to act in good faith and its desire to settle pursuant to the Term Sheet has not changed. On the other hand, plaintiffs have violated the terms of the Term Sheet by seeking fees without justification and then, when that violation was questioned, attempting to unilaterally nullify the Term Sheet, all without making any effort to negotiate the final settlement agreement. While OMH recognizes that the Term Sheet is not a binding final resolution of all settlement terms, it certainly is an enforceable, binding written agreement that requires the parties at least to attempt to negotiate and submit to the Court for final approval a settlement agreement. OMH intends to enforce that agreement.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California 94111

- 3 -

Notice of Motion and Motion to Enforce
Settlement Term Sheet Agreement
-- Case No. CV-09-06194 VBF (FMOx)

Consequently, OMH respectfully requests that the Court grant this motion to enforce the Term Sheet, which will result in requiring the parties to engage in negotiations over the terms of the final settlement agreement. *Wilkinson v. FBI*, 922 F.2d 555, 557 (9th Cir. 1991) ("District courts have inherent power to enforce settlement agreements").

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on and before March 18, 2010. Plaintiffs' counsel stated that plaintiffs intend to oppose this motion. Given the request made by plaintiffs to re-calendar their motion for class certification and their stated intention to oppose this motion, OMH could not wait ten days as provided in L.R. 7-3 before filing this Notice of Motion and further meet and confer efforts do not appear productive.

This motion will be based on this Notice of Motion, the subsequently-filed Memorandum of Points and Authorities in support of the motion, the pleadings on file herein, and upon such other and further oral and/or documentary evidence as may be presented at the time of the hearing on this motion.

DATED: March 18, 2010

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By: */s/ Evan S. Nadel*
     Evan S. Nadel

Attorneys for Defendant
WELLPET LLC as Successor-in-Interest
to OLD MOTHER HUBBARD, INC.

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California 94111

- 4 -

Notice of Motion and Motion to Enforce
Settlement Term Sheet Agreement
-- Case No. CV-09-06194 VBF (FMOx)

# EXHIBIT A

## Compromise Proposal Term Sheet

This compromise proposal is based on and subject to coming to a final settlement agreement with respect to a complete resolution in exchange for a full and final release of all claims by all members of the putative settlement class, as detailed below:

1. The three named plaintiffs, a putative nation-wide class, and Newport Trial Group, Scott J. Ferrell and all other plaintiffs' counsel in this action ("NTG") shall provide defendant, its parents, subsidiaries, related entities, successors, affiliates, agents, officers, directors, distributors, manufacturers, retailers, advertisers, and/or assigns, including, without limitation, any defendant that has ever been named in this lawsuit, with a release of any and all claims, allegations or disputes of any kind that the putative class may have, whether known or unknown, related to the packaging, labeling, advertising and/or promotion of defendant's products. All of the parties released in this paragraph shall also provide a reciprocal release to NTG and the other parties in this paragraph.

2. Upon execution of the settlement agreement and approval by the Court, the case will be settled on a class-wide basis with consumers retaining the right to opt-out ~~upon written notice to Defendant~~. The putative settlement class will include all consumers in the United States who purchased or used Wellness products and/or who have any right to assert any claims, allegations or disputes of any kind that the putative class may have, whether known or unknown, related in any way to the packaging, labeling, advertising and/or promotion of Wellness products.

3. Upon execution of the settlement agreement and approval by the Court, which shall be conditions precedent to any obligation by defendant, defendant shall:

   (a) Pay a maximum amount of $300,000.00 for attorneys' fees and litigation costs to NTG (the "Fees"), subject to approval by the Court and subject to the limitations in Paragraph 4 below. In no event shall defendant pay any amounts in excess of $300,000 toward Fees.

   (b) Pay a maximum amount of $25,000 toward the costs of notice to the class utilizing any notice mechanism selected by the parties and approved by the Court. NTG shall be responsible for paying any costs of notice exceeding $25,000, but no greater than $50,000 in notice costs (i.e., NTG shall not be responsible for contributing more than $25,000 to the costs of notice). If the total costs of notice to the class utilizing the means of notice approved by the Court exceed $50,000, then either party is (or both parties are) permitted to withdraw from this settlement agreement with no further obligation provided that the parties cannot agree after good faith discussions over how to divide the costs of notice in excess of $50,000.

   (c) Pay $2,500 to each of the three named plaintiffs in this action for his and her individual fee enhancement request as a putative class representative ("Enhancement Awards"), subject to approval by the Court and subject to the limitations in Paragraph 5 below. In no event shall defendant pay any Enhancement Awards in excess of $2,500 per named plaintiff.

(d) Donate pet food products with a retail value of $100,000 to the National Humane Society;

(e) Agree to forebear from using the Statements on any labels, packaging or advertising of Wellness products. The Statements are (i) characterizing or describing any product as "human grade" (except that certain specific product ingredients that are human grade can be described as such); and (ii) characterizing or describing any product as "fit for human consumption" or "suitable for human consumption" (except that certain specific product ingredients that are fit for human consumption or suitable for human consumption can be identified as such). For purposes of this Agreement, Defendant will not oppose payment to NTG of catalyst fees approved by the Court as part of the fee award referenced in paragraph 3(a), provided, however, that the total amount of fees requested by NTG shall not exceed $300,000.

4. Subject paragraph 3, NTG may apply to the Court for an award of fees and costs not to exceed the amount of the $300,000. Defendant shall not oppose, in any way (including, without limitation, the filing of a Qualified Non-Opposition or the like), NTG's fee application of up to this amount. If the Court approves an award of Fees to NTG in an amount less than $300,000, then defendant will pay only the Court-approved amount and will retain any difference between $300,000 and the Court-approved total Fees.

5. Subject paragraph 3, defendant will not oppose, in any way, a fee enhancement request for each named plaintiff in an amount not to exceed $2,500 per named plaintiff. If the Court approves an Enhancement Award in an amount less than $2,500 for any named plaintiff, then defendant will pay only the Court-approved amount for that plaintiff and will retain any difference between $2,500 and the Court-approved Enhancement Award.

6. This settlement shall not be deemed an admission of liability or wrongdoing on the part of defendant, its parents, subsidiaries, related entities, successors, affiliates, agents, officers, directors, distributors, manufacturers, advertisers, retailers, and/or its assigns, including, without limitation, any defendant that has ever been named in this lawsuit, and it may not be used in any proceeding for that purpose. Defendant denies all liability.

7. The parties agree to make every reasonable effort to move the case toward final approval as soon as reasonably possible and, unless instructed to the contrary by the Court, to abide by the following deadlines:

| Date | Event |
|---|---|
| March 5th, 2010: | Presentation of Notice of Settlement to the Court |
| April 2nd, 2010: | Completion of Notice Process |
| April 9th, 2010: | Filing of Motion for Final Approval |
| April 30th, 2010: | Final Approval Hearing |

_____  
~~Mark C. Goodman~~ Evan J. Nadel  
Counsel for Defendant

_____  
Scott J. Ferrell  
Counsel for Plaintiffs,  
Individually, and on behalf of a class of similarly situated persons.